CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 3 0 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DAVID WADE, Administrator )
of the Estate of Elizabeth Wade, )
 )
Plaintiff, ) Civil Action No. 7:18CV00127
 )
v. ) **MEMORANDUM OPINION**
 )
ANDREW SAUL, ) By: Hon. Glen E. Conrad
Commissioner of Social Security,[1] ) Senior United States District Judge
 )
Defendant. )

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's deceased wife's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423.[2] Jurisdiction of this court is established pursuant to 42 U.S.C. § 405(g). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Richardson v. Perales, 402 U.S. 389, 401 (1971).

---

[1] Andrew Saul is now the Commissioner of Social Security, and he is automatically substituted as a party pursuant to Federal Rule of Civil Procedure 25(d); see also 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[2] The original claimant, Elizabeth Wade, died sometime after the first administrative hearing on her claim for disability insurance benefits. This case was filed by Mrs. Wade's husband, David Wade, as the administrator of her estate. For purposes of consistency and clarity, the court will hereinafter refer to Elizabeth Wade as the plaintiff.

Elizabeth Wade was born on May 1, 1959, and eventually completed her college education. Mrs. Wade worked for many years in the Child Support Enforcement Division of the Department of Social Services. She last worked on a regular and sustained basis in 2000. On April 19, 2010, Mrs. Wade filed an application for a period of disability and disability insurance benefits. In filing her current claim, Mrs. Wade alleged that she became disabled for all forms of substantial gainful employment on July 11, 2000, due to a variety of conditions, including asthma, fibromyalgia, back injury with herniated discs, migraine headaches, arthritis, hepatitis C, hypersomnolence with extreme fatigue, depression/anxiety, Charcot joint or diffuse pigmented villonodular synovitis, and foot deformities. (Tr. 279). Plaintiff alleged that she was permanently disabled. The record reveals that Mrs. Wade met the insured status requirements of the Act through the second quarter of 2006, but not thereafter. See generally 42 U.S.C. §§ 416(i) and 423(a). Consequently, plaintiff is entitled to a period of disability and disability insurance benefits only if she established that she became disabled for all forms of substantial gainful employment on or before June 30, 2006.

Mrs. Wade's application for disability insurance benefits was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated May 16, 2013, the Law Judge also determined that Mrs. Wade was not disabled on or before her date last insured. The Law Judge found that Mrs. Wade suffered from several severe impairments through that date, including obesity, degenerative disc disease of the lumbar spine, migraines, asthma, hypertension, hepatitis C, obstructive sleep apnea, and depression. Despite these impairments, the Law Judge determined that Mrs. Wade retained sufficient functional capacity for a limited range of light exertional activity that did not require performance of complex tasks or skilled work. (Tr. 17).

Given such a residual functional capacity, and after having considered plaintiff's age, education, and prior work experience, the Law Judge determined that Mrs. Wade was unable to perform any past relevant work through the date last insured. However, the Law Judge found that she retained the capacity to perform other work roles existing in significant number in the national economy. Accordingly, the Law Judge ultimately concluded that Mrs. Wade was not disabled prior to June 30, 2006, and that she was not entitled to a period of disability or disability insurance benefits. See 20 C.F.R. § 404.1520(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mrs. Wade appealed to this court.

By memorandum opinion and order entered July 17, 2015, the court remanded plaintiff's case to the Commissioner for further development and consideration. See Wade v. Colvin, No. 7:14-cv-00569, 2015 U.S. Dist. LEXIS 93223 (W.D. Va. July 17, 2015). The court held that the evidence supported the Law Judge's assessment of the opinion evidence, including the Law Judge's determination to give little weight to a medical source statement completed by plaintiff's treating physician, Dr. Don Brady, in 2012, six years after her insured status expired. However, the court observed that while the Law Judge found that plaintiff had moderate difficulties in maintaining concentration, persistence, or pace, the Law Judge did not include a corresponding limitation in his assessment of plaintiff's residual functional capacity, or explain why no such limitation was required. Accordingly, based on several decisions, including the recent decision of the United States Court of Appeals for the Fourth Circuit in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), the court found good cause to remand the case to the Commissioner for further development and consideration.

3

On remand, the Commissioner assigned the case to the same Administrative Law Judge for a supplemental hearing and decision. The Law Judge issued a new decision on October 26, 2016. In his second opinion, the Law Judge once again determined that Mrs. Wade was not disabled on or before her date last insured. The Law Judge found that Mrs. Wade suffered from several severe impairments through that date, including obesity, degenerative disc disease of the lumbar spine, migraines, asthma, hypertension, hepatitis C, obstructive sleep apnea, and depression, but that these impairments did not, either individually or in combination, meet or medically equal the requirements of a listed impairment. The Law Judge then assessed Mrs. Wade's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) with exceptions.[3] The claimant could occasionally climb, balance, stoop, kneel, crouch, and crawl. She could tolerate occasional exposure to extreme cold, wetness, and humidity. The claimant could tolerate occasional exposure to excessive noise and vibrations, as well as occasional exposure to pulmonary irritants such as fumes, odors, gases, and poorly ventilated areas. Work was limited to simple, unskilled tasks, in a low stress environment that allowed for regularly scheduled breaks, required only occasional decision-making, and was not production rate or pace work with strict production standards. She had to avoid all exposure to operational control of moving machinery, unprotected heights, and hazardous machinery.

---

[3] Light work is defined in the regulation as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

(Tr. 2044). Given such a residual functional capacity, and after considering testimony from a vocational expert, the Law Judge determined that Mrs. Wade was unable to perform any past relevant work through the date last insured. However, the Law Judge found that she possessed the capacity to perform other work roles existing in significant number in the national economy. Accordingly, the Law Judge concluded that Mrs. Wade was not disabled at any time from the alleged onset date through the date last insured, and that she was not entitled to a period of disability or disability insurance benefits. See 20 C.F.R. § 404.1520(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, plaintiff has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159–60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. The Law Judge's opinion reflects a thorough evaluation of Mrs. Wade's medical problems and the extent to which they affected her ability to work. Although Mrs. Wade suffered from a combination of physical and emotional impairments prior to her date last insured, substantial evidence supports the Law

5

Judge's assessment of her residual functional capacity and his determination that she was not disabled for all forms of substantial gainful employment on or before June 30, 2006.

The record reflects that on June 5, 2000, one month prior to her alleged onset date, Mrs. Wade presented to the emergency department at Carilion Roanoke Memorial Hospital with epigastric pain. Physical examination findings were largely normal, aside from mild abdominal tenderness. Mrs. Wade was alert, fully oriented, and exhibited no gross focal or sensory deficits. (Tr. 349).

Over a year later, in July of 2001, Mrs. Wade presented to her primary care physician, Dr. Don Brady, with complaints of fatigue and chronic back pain. (Tr. 930). Plaintiff reported that her symptoms were precipitated by prolonged standing and partially relieved by medication. On examination, plaintiff exhibited tenderness in the lumbar area, but had full range of motion, no edema, and intact neurological functioning. Dr. Brady noted that plaintiff was alert and oriented, and that her energy had improved. He diagnosed plaintiff with chronic back pain resulting from a work-related injury.[4] (Tr. 931). When Mrs. Wade returned the following month, she complained of numbness in her legs, muscle spasms, and radiating pain. (Tr. 932). However, a straight leg raise test was negative, and plaintiff was found to have intact neurological functioning and no edema. Additionally, Mrs. Wade denied experiencing depression or anxiety. (Tr. 932).

In August of 2001, Mrs. Wade began treatment with Dr. Murray Joiner, a physical medicine and rehabilitation specialist. (Tr. 675). Plaintiff complained of radiating lower back pain resulting from a work-related accident. Dr. Joiner's physical examination findings indicate that plaintiff was alert, oriented, and in no acute distress. (Tr. 677). Plaintiff exhibited tenderness in her hips, knees, and spine with palpation. (Tr. 678). However, a straight leg raise

---

[4] During the first administrative hearing, plaintiff testified that she hurt her back in July of 2000, after tripping over an uneven surface at work. (Tr. 40–41).

test was once again negative, and plaintiff exhibited full strength and intact sensation. Additionally, EMG and nerve conduction studies were "normal [and] without evidence of neuropathy, myopathy, or radiculopathy." (Tr. 673, 685).

In October of 2001, Mrs. Wade returned to Dr. Brady with complaints of back pain and a recent migraine headache. (Tr. 933). Dr. Brady noted that plaintiff's symptoms of depression had improved, and physical examination findings were largely unchanged from previous visits. (Tr. 934). The same was true in December of 2001. Although plaintiff continued to exhibit mild lumbar tenderness, neurological functioning was grossly intact, plaintiff was fully alert and oriented, and she exhibited no signs of mood, thought, or memory difficulties. (Tr. 938).

Mrs. Wade returned to Dr. Joiner on December 4, 2001. During the examination, plaintiff reported experiencing no relief from a recent epidural injection. However, on physical examination, Mrs. Wade was found to have experienced "significant improvement with decreased overall tenderness and spasms," and "no increased tenderness . . . with extension." (Tr. 668). A straight leg raise test was negative and plaintiff's neurological functioning was objectively intact. (Tr. 668). Dr. Joiner continued plaintiff on her existing medication regimen and ordered a CT myelogram of the lumbar spine. The CT scan revealed "degenerative lumbar stenosis at L2-3 with a mild diffuse disc bulge." (Tr. 688).

Plaintiff returned to Dr. Brady and Dr. Joiner in February of 2002. Records from Dr. Brady indicate that plaintiff's migraines had improved and were less frequent. She exhibited full range of motion, with no edema or tenderness in her extremities. (Tr. 946). When Mrs. Wade presented to Dr. Joiner a few weeks later, a spinal examination revealed only mild paraspinal tenderness, no specific joint tenderness, and no increased tenderness with extension past neutral. (Tr. 664). Dr. Joiner recommended that plaintiff begin an independent exercise program with a

personal trainer. (Tr. 665). In April of 2002, after working out with a personal trainer and seeing a counselor, plaintiff reported that she was pleased with the results. (Tr. 659). Dr. Joiner advised Mrs. Wade to continue with her existing courses of action, and "recommended continued vocational rehab intervention." (Tr. 660).

In May of 2002, Mrs. Wade presented to Dr. Brady with complaints of left knee pain and swelling. Dr. Brady's examination notes indicate that plaintiff exhibited "some tenderness laterally," but maintained good stability and had no effusion or pain on compression. (Tr. 953). Dr. Brady diagnosed plaintiff with a knee sprain or strain. When Mrs. Wade returned two weeks later, she had full range of motion, with no edema or tenderness, and she reported that her headaches had decreased in frequency and severity. (Tr. 955). However, because plaintiff also indicated that her headaches left her with a feeling of confusion, Dr. Brady recommended that she follow up with a neurologist. When Mrs. Wade returned to Dr. Brady the following month, she reported that she was being treated with Topamax and that her "[symptoms] of complicated migraine [had] not recurred." (Tr. 956).

On September 4, 2012, Mrs. Wade presented to Dr. Brady for a medication recheck. At that time, plaintiff complained of worsening fatigue after moving to a different residence. (Tr. 466). Dr. Brady prescribed Verapamil for hypertension. He also noted that plaintiff was taking five tabs of Lorcet per day for pain. (Tr. 466).

On September 29, 2002, Mrs. Wade was transported to the emergency department after her husband found her unresponsive. (Tr. 369). Although plaintiff's physical examination was largely unremarkable, a drug screen was positive for opiates and antidepressants. (Tr. 371–76). The examining physicians opined that plaintiff's syncope and reported confusion likely resulted from unintentional overmedication. (Tr. 372, 377). Examination notes indicate that Mrs. Wade

8

"confess[ed] of the possibility to taking medication more than recommended or taking medication . . . prescribed to [her] husband," namely, Oxycontin. (Tr. 372, 383). Mrs. Wade was discharged the following day with instructions to follow up with her primary care physician. (Tr. 372).

On October 9, 2002, Mrs. Wade returned to Dr. Joiner after having undergone a functional capacity evaluation. Physical examination findings were largely unremarkable. A spinal examination revealed "mild tenderness and increased tone," "[n]o increased tenderness . . . with extension," and "[n]o SI specific tenderness." (Tr. 655). A straight leg raise test was negative, plaintiff's sensory function remained intact, and she exhibited good strength. (Tr. 655). With respect to the functional capacity evaluation, Dr. Joiner noted that "there was evidence of symptom exaggeration" and "partial submaximal effort, making it difficult to accurately assess [Mrs.] Wade's true physical capabilities." (Tr. 655). Dr. Joiner then summarized the results of the functional capacity evaluation as follows:

> At the least . . . , she was felt to be capable of occasional lifting 20 pounds, frequent lifting 15 pounds, constant lifting 6 pounds. She could sit frequently, stand occasionally, walk occasionally, bend occasionally, reach shoulder level and below knees occasionally, waist level frequently, climb occasionally, squat infrequently, kneel infrequently, crawl infrequently, twist occasionally.

(Tr. 655). Dr. Joiner went on to note that Mrs. Wade was "capable of full unrestricted duty" based on the results of the functional capacity evaluation. (Tr. 656).

Dr. Joiner subsequently ordered an MRI of plaintiff's lumbar spine. The MRI revealed degenerative disc changes at several levels, but showed no evidence of disc herniation, spinal stenosis, or pathological destructive process. (Tr. 689).

On November 13, 2012, Mrs. Wade reported to Dr. Joiner that she was experiencing increased pain as a result of the recent weather, and that she was having "difficulty with standing, sitting, walking, and essentially all activities." (Tr. 651). On physical examination, plaintiff

exhibited spinal tenderness to palpation. However, a straight leg raise test was negative, her sensation was intact, and she had full strength. (Tr. 651). Dr. Joiner noted that plaintiff was released to return to work based on the previous functional capacity evaluation. (Tr. 652).

Over the course of the following year, Mrs. Wade continued to see Dr. Brady. In February of 2003, Dr. Brady noted that plaintiff was alert and oriented, with no evidence of any mood, thought, or memory problems. (Tr. 965). Physical examination findings were largely unchanged from previous visits. Consistent findings were documented in April, June, August, and September of 2003. (Tr. 970, 973, 980, 985).

Mrs. Wade saw Dr. Brady and Dr. Joiner again in October of 2004. Dr. Brady's physical examinations findings were essentially unremarkable. He noted that plaintiff denied experiencing depression or anxiety, and that there were "no signs of mood, thought, or memory difficulty." (Tr. 535). When plaintiff saw Dr. Joiner five days later, she reported increased pain after driving for a "job club," which required her to travel 138 miles round trip. (Tr. 645). On physical examination, plaintiff was found to have back tenderness and mild spasms, but a straight leg raise test was negative, plaintiff's sensation was intact, and her strength was good. (Tr. 646).

During a follow-up appointment with Dr. Joiner in July of 2005, Mrs. Wade continued to complain of lower back and extremity pain, but acknowledged that her medications were "helping." (Tr. 641). Dr. Joiner noted that she was not undergoing any form of physical therapy at that time, but was involved in vocational rehabilitation efforts. Although plaintiff still exhibited some tenderness on examination, a straight leg raise test was negative and plaintiff continued to have intact sensation and full strength. (Tr. 642). She was given a steroid injection and advised to return every three to six months. (Tr. 642).

On August 8, 2012, over six years after plaintiff's insured status expired, Dr. Brady completed an assessment of plaintiff's physical ability to perform work-related activities. Dr. Brady opined that plaintiff could occasionally lift less than ten pounds, stand for no more than ten minutes at a time and for a total of less than two hours in an eight-hour workday, and sit for less than two hours in an eight-hour workday. (Tr. 1271–72). Dr. Brady further opined that plaintiff could never climb, balance, kneel, crouch, crawl, or stoop; that she could engage in only occasional reaching; and that she would need to be absent more than three times per month. (Tr. 1272–74). Dr. Brady also opined that plaintiff's condition had existed and persisted with such limitations since July 14, 2000. (Tr. 1274).

After considering all of the evidence of record, the Law Judge determined that Mrs. Wade's physical impairments were not so severe as to prevent performance of a limited range of light work activity through her date last insured. In making this determination, the Law Judge found that Mrs. Wade's allegations of totally disabling limitations during the relevant time period were "out of proportion with the weak and inconsistent objective medical findings contained in the record." (Tr. 2052). Although "imaging confirmed degenerative disc disease," the Law Judge noted that the medical records were devoid of any evidence of swelling or inflammation, muscle atrophy, or consistent difficulty moving. (Tr. 2052). The Law Judge also noted that plaintiff's migraine headaches were intermittent and generally controlled with the medications provided. (Tr. 2052).

The Law Judge also declined to accept Dr. Brady's 2012 assessment of plaintiff's physical ability to work. Although the Law Judge recognized that Dr. Brady was plaintiff's primary care physician for many years, the Law Judge emphasized that "this opinion was offered six years after the claimant's date last insured and twelve years after her alleged onset date." (Tr. 2052). The

11

Law Judge also noted that the limitations identified by Dr. Brady were inconsistent with the examination records from the relevant period, as well as "the claimant's release back to work by Dr. Joiner in 2002." (Tr. 2052). The Law Judge assigned greater weight to the opinions of Dr. John Sadler and Dr. Joseph Duckwall, who reviewed the records at the request of the state agency. Both of the state agency physicians opined that plaintiff could work at the light exertional level with postural and environmental limitations. (Tr. 87–88, 111–12). The Law Judge found that their assessments were more consistent with the record as a whole, including the objective findings on examination. (Tr. 2052). The Law Judge also gave greater weight to the reports from Dr. Joiner, which indicated that plaintiff was fully capable of meeting the lifting requirements for light work. (Tr. 2052).

The Law Judge also concluded that Mrs. Wade's mental impairments did not render her disabled for all forms of substantial gainful employment or otherwise contribute to an overall disability. In evaluating her impairments at step three of the sequential analysis, the Law Judge determined that plaintiff had "moderate difficulties" with concentration, persistence, or pace. (Tr. 2043). The Law Judge noted that although plaintiff "intermittently complained of issues with depression to providers, . . . mental status examinations were generally benign," and the medical evidence "generally supports [only] minimal limitations in this area." (Tr. 2043). Nonetheless, based on the plaintiff's allegations of depression, fatigue, and medication side effects during the relevant time period, the Law Judge found it appropriate to limit Mrs. Wade to "simple, routine task[s] in a low stress environment free of production or paced work and allowing for regularly scheduled breaks." (Tr. 2043). The Law Judge found that such limitations would adequately accommodate any alleged deficits in this area of functioning. (Tr. 2043).

On appeal to this court, the plaintiff, through counsel, makes four arguments in support of her motion for summary judgment. First, the plaintiff argues that the Law Judge's assessment of her mental impairments is not supported by substantial evidence. Relying on the Fourth Circuit's decision in Mascio, the plaintiff argues that the Law Judge's findings regarding her residual functional capacity ("RFC"), and the corresponding hypothetical question posed to the vocational expert, did not sufficiently accommodate her moderate difficulties with concentration, persistence, or pace. For the following reasons, however, the court is unable to agree.

In Mascio, the Law Judge credited Mascio's diagnosis of an adjustment disorder and also found that she had moderate difficulties with maintaining concentration, persistence, or pace as a side effect of her pain medication. Mascio, 780 F.3d at 638. Although the hypothetical posed to the vocational expert "said nothing about Mascio's mental limitations," the vocational expert included an "unsolicited addition of 'unskilled work,'" which "matched the ALJ's findings regarding Mascio's residual functional capacity." Id. The Fourth Circuit ultimately "agree[d] with other circuits that the ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Court reasoned that "the ability to perform simple tasks differs from the ability to stay on task." Id. Because the Law Judge failed to explain "why Mascio's moderate limitation in concentration, persistence and pace at step three [did] not translate into a limitation in Mascio's residual functional capacity," the Fourth Circuit concluded that a remand was required. Id.

Upon review of the record in this case, the court concludes that the Law Judge's assessment of Mrs. Wade's mental impairments is supported by substantial evidence and that remand is not required under Mascio. In determining that Mrs. Wade had moderate difficulties

with concentration, persistence, or pace, the Law Judge partially credited her allegations of depression, fatigue, and side effects from medication. After considering plaintiff's particular difficulties in these areas of functioning, the Law Judge found that she was limited to "simple, unskilled tasks, in a low stress environment that allowed for regularly scheduled breaks, required only occasional decision-making, and was not production rate or pace work with strict production standards."[5] (Tr. 2044). The Law Judge specifically found that such restrictions adequately accommodated her difficulties with concentration, persistence, or pace, and that the record as a whole indicated that she did not require additional work-related limitations. (Tr. 2043, 2051–52). As noted above, the Law Judge emphasized that plaintiff's medical records did not document any cognitive limitations on examination or suggest that additional functional restrictions were necessary as a result of her nonexertional impairments. (Tr. 2051).

Thus, unlike Mascio, the Law Judge did not summarily limit Mrs. Wade to unskilled work without explanation. Instead, the Law Judge formulated specific limitations that he found would sufficiently accommodate plaintiff's particular deficiencies in the area of concentration, persistence, or pace. The court is satisfied that the Law Judge provided an adequate explanation of how his RFC findings fully accounted for Mrs. Wade's nonexertional limitations, and that his assessment is supported by substantial evidence. The simple fact is that Mrs. Wade received routine and/or conservative treatment for depression and anxiety prior to her date last insured, and that no practitioner ever suggested that she had a mental or nonexertional impairment that resulted in more significant functional limitations than those identified by the Law Judge. Moreover, Mrs.

---

[5] With respect to the latter limitation, the Law Judge further explained during the administrative hearing that he intended to "eliminate those jobs that have strict production rate or pace requirements whether that's on a factory line or something where if you slow down and you can't keep up, then it slows down everybody else." (Tr. 2076–77). Accordingly, the vocational expert focused on jobs that did not involve fast-paced assembly work. (Tr. 2077).

Wade was repeatedly found to exhibit no signs of mood, thought, or memory difficulties prior to the expiration of her insured status. For all of these reasons, the court concludes that the Law Judge's second decision comports with Mascio.

In her second argument, plaintiff once again argues that the Law Judge erred in failing to give significant weight to Dr. Brady's opinions. Having reviewed the record in its entirety, the court remains convinced that substantial evidence supports the Law Judge's decision. Although Dr. Brady did opine that plaintiff's musculoskeletal problems rendered her disabled prior to the termination of her insured status, Dr. Brady made his assessment in 2012, six years after the plaintiff's date last insured. Moreover, the Law Judge accurately observed that the extreme limitations assessed by Dr. Brady were inconsistent with the objective evidence during the relevant time period, including Dr. Brady's own physical examination findings. Moreover, the court believes that the Law Judge reasonably determined to give greater weight to other medical evidence, including the reports from Dr. Sadler, Dr. Duckwall, and Dr. Joiner. The Law Judge reasonably concluded that the opinions of the state agency physicians and Dr. Joiner were generally more consistent with the objective findings and other medical evidence.[6] In short, the court believes that the Law Judge's decision to discount the opinions offered by Dr. Brady is well supported by the record. See, e.g., Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 66 (4th Cir. 2004) (affirming the Law Judge's decision to reject the opinion of a treating physician that was

---

[6] All three physicians found that plaintiff was capable of meeting the lifting requirements for light work, and both of the state agency physicians determined that plaintiff could sit, stand, and/or walk for about six hours in an eight-hour workday. (Tr. 87, 124). Although Dr. Joiner found that plaintiff could, at a minimum, "sit frequently, stand occasionally, [and] walk occasionally" (Tr. 655), such findings are not inconsistent with the regulatory definition of light work, and do not otherwise undermine the Law Judge's conclusion that plaintiff could perform a limited range of light work. See 20 C.F.R. § 1567(b) (explaining that the "full" range of light work "requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls") (emphasis added).

15

"inconsistent with the mild to moderate diagnostic findings" and "the conservative nature of [the plaintiff's] treatment").

Plaintiff's third argument is that the Law Judge failed to conduct a proper function-by-function analysis in assessing her residual functional capacity. In particular, plaintiff contends that the Law Judge failed to make sufficient findings regarding her alleged need to "frequently change positions and take breaks to rest or lie down." Pl.'s Br. Supp. Summ. J. 34, Dkt. No. 19.

Upon review of the record and applicable caselaw, the court finds this argument unpersuasive. Although guidelines from the Social Security Administration instruct the Law Judge to take a "function-by-function" approach to determining a claimant's residual functional capacity, SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996), the Fourth Circuit has "rejected a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." Mascio, 780 F.3d at 635. Instead, the Court agreed with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). In this case, it is clear from the Law Judge's decision that he considered Mrs. Wade's claimed limitations, but found that such limitations were inconsistent with the findings on physical examination prior to her date last insured and the plaintiff's own statements to treating physicians during that time period. (Tr. 2051–52). The Law Judge also emphasized that his RFC findings were largely consistent with the opinions of the state agency physicians and Dr. Joiner. (Tr. 2052). Upon review of the record, the court is convinced that the Law Judge's treatment of plaintiff's claimed limitations is consistent with the protocol established in Mascio and Monroe v.

Colvin, 826 F.3d 176 (4th Cir. 2016), and that substantial evidence supports the Law Judge's evaluation of plaintiff's residual functional capacity through the date last insured.

Finally, plaintiff contends that the Law Judge's assessment of her allegations and subjective complaints is not supported by substantial evidence. Although Mrs. Wade alleged that she experienced totally disabling pain, discomfort, and fatigue prior to her date last insured, the Law Judge found that the plaintiff's statements regarding the intensity and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record. The Law Judge provided specific reasons for his decision to not fully credit the plaintiff's statements regarding the severity of her symptoms. For instance, the Law Judge noted that plaintiff's subjective complaints were "out of proportion with the weak and inconsistent objective medical findings contained in the record." (Tr. 2052). Ultimately, the Law Judge found that the evidence simply did "not support any work related limitations that would preclude all work prior to June 2006." (Tr. 2052).

Upon review of the record, the court is unable to discern any error in the Law Judge's credibility findings. The Law Judge thoroughly considered plaintiff's medical history along with her own allegations regarding the symptoms of her physical and mental impairments. The court agrees that plaintiff's allegations of totally disabling symptoms are somewhat inconsistent with the complaints documented in the treatment records, the objective findings on examination, and the relatively conservative treatment measures provided before her date last insured. Thus, the court is satisfied that substantial evidence supports the Law Judge's decision not to fully credit plaintiff's allegations.

In affirming the Commissioner's final decision, the court does not suggest that Mrs. Wade was free of all pain and discomfort during the relevant time period. Indeed, the medical evidence

confirms that plaintiff suffered from impairments that could be expected to result in subjective limitations. However, the record simply does not include medical evidence that is consistent with totally disabling symptomatology prior to the expiration of plaintiff's insured status. It must be recognized that the inability to work without any subjective complaints does not of itself render a claimant disabled. See Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996). It appears to the court that the Law Judge considered all of the medical evidence, as well as all of the subjective factors reasonably supported by the record, in adjudicating Mrs. Wade's claim for benefits. Thus, the court concludes that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, the resolution of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson, 402 U.S. at 400–01; Craig, 76 F.3d at 589; Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed.

The Clerk is directed to send copies of this memorandum opinion to all counsel of record.

DATED: This 20th day of September, 2019.

_____
Senior United States District Judge